UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANYA McNEELY,                                    Case No. 12-12608

           Plaintiff,                      David M. Lawson
v.                                                United States District Judge

KROGER,                                           Michael Hluchaniuk
                                                  United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 26)**

## I.   PROCEDURAL HISTORY

Plaintiff filed a pro se complaint alleging claims under the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA) on June 14, 2012.  (Dkt. 1).  This matter was referred by District Judge David M. Lawson for all pretrial proceedings.  (Dkt. 6).  Counsel appeared for plaintiff on August 29, 2012.  (Dkt. 8).  An amended complaint was filed on that same date.  (Dkt. 9).  Pursuant to stipulation and order, plaintiff was permitted to amend the complaint a second time.  (Dkt. 23, 24).

Kroger filed a motion for summary judgment on October 25, 2013.  (Dkt. 26).  Plaintiff filed a response on December 2, 2013.  (Dkt. 30).  On December 17, 2013, Kroger filed a reply.  (Dkt. 31).  On December 24, 2013, the parties filed

their joint statement of resolved and unresolved issues.  (Dkt. 34).  The parties

resolved the ADA claim and plaintiff agreed to dismiss it.  They submitted a

stipulation and order to Judge Lawson, and it was entered.  (Dkt. 35). Thus, only

the FMLA claims remain at issue.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendant's motion for summary judgment be **DENIED**.

## II.    FACTUAL SUMMARY

The Court will briefly summarize the facts as follows.  A more detailed

factual discussion is included in the analysis section below.  Plaintiff began

working for defendant Kroger as a meat clerk in August of 2001.  (Dkt. 30, Ex. 1,

pp. 10, 15).  She initially worked at Kroger's 25850 Grand River, Redford,

Michigan location.  (Dkt. 30, Ex. 1, p. 20).  When that location was closed, she

was transferred to Kroger's 8920 West 8 Mile Rd., Ferndale, Michigan location in

September of 2002.  (Dkt. 30, Ex. 1, pp. 20-21).  Plaintiff worked at this location

as a full-time meat and seafood clerk until she was terminated, effective October

15, 2010.  (Dkt. 30, Ex. 1, pp. 9-10, 20 and Ex. 4).

Plaintiff first requested FMLA leave in 2005, and every year since 2005 she

has renewed her request for FMLA leave.  (Dkt. 30, Ex. 1, pp. 44-45, 178-180).

Plaintiff utilized her FMLA leave on an intermittent basis to care for her minor son

who suffers from severe asthma.  (Dkt. 30, Ex. 1, pp. 67, 179-181).  Since 2005,

plaintiff has been able to utilize her FMLA leave on an intermittent basis to care for her son.  (Dkt. 30, Ex. 1, pp. 71-74, 115-116, 118-119).

Plaintiff was working her usual shift on October 15, 2010, when she received a phone call around 5:30 p.m. from her son that he needed emergency assistance due to his asthma.  (Dkt. 30, Ex. 1, pp. 76, 84, 96).  In an effort to utilize her FMLA intermittent leave, and pursuant to what plaintiff claims is Kroger's past practice and policy, plaintiff sought permission from her co-manager Jarrett Rawls, to leave the premises and provide emergency assistance to her son.  (Dkt. 30, Ex. 1, pp. 72-74, 76, 81).  Rawls, however, was not in the store.  (Dkt. 30, Ex. 1, p. 76).  Unable to find co-manager Rawls, plaintiff sought permission from her department manager, Kirk Donner.  (Dkt. 30, Ex. 1, pp. 72-74, 76).  Donner granted her request to utilize her FMLA intermittent leave, drove her home to provide emergency assistance to her son, and then drove her back after plaintiff's mother arrived to provide extended care and supervision.  (Dkt. 30, Ex. 1, pp. 76, 82, 134).

Before leaving the Kroger premises to utilize her FMLA leave, plaintiff says she punched out on the time clock.  (Dkt. 30, Ex. 1, pp. 89-90, 110, 185-186).  Plaintiff then says she returned to work at or around 6:45 pm and punched in on the time clock.  (Dkt. 30, Ex. 1, p. 101).  On returning to work, co-manager Rawls questioned her about her absence.  (Dkt. 30, Ex. 1, pp. 96, 103-106).  While Rawls

was reprimanding plaintiff, she says explained that she had left the store because her son was having an emergency; that she had FMLA; that she had looked for him before she left the store's premises; and that department manager Donner gave her permission to leave.  (Dkt. 30, Ex. 1, pp. 96, 103, 116, 206).

Later that same evening, plaintiff was called back to co-manager Rawls' office, where a union representative was present; at this time, he provided her with a Constructive Advice Record stating she was being "SUSPENDED PENDING ADVISORY DISCHARGE."  (Dkt. 30, Ex. 1, pp. 96, 103-107; Ex. 3).  Plaintiff says it is likely that the phrase "suspended pending advisory discharge" should have been "suspension pending advisability of discharge," as stated in the employee handbook's progressive attendance policy, since there is no other progressive discipline policy contained in the handbook.  (Dkt. 30, Ex. 2, p. 16). Plaintiff, believing the Constructive Advice Record to be inappropriate, refused to sign it.  (Dkt. 30, Ex. 1, p. 112).  According to the Constructive Advice Record prepared by Rawls on the date of the incident, plaintiff was suspended pending discharge for two reasons: "quality of work" and "walking off job without permission."  (Dkt. 26-6).  According to this document, plaintiff was scheduled until 10 pm on October 15, 2010, she left the store at 5:30 p.m. without permission, she did not punch out or attempt to punch out, and she returned to work at 6:55 p.m.  *Id*.  According to this document, "this is considered walking off

the job.  Tanya also left perishable lunch [meat] on the sales floor while she was gone." *Id*.  According to Rawls' statement two days after the events in question, plaintiff told him that she left for lunch because she was scheduled late and she had to feed her children.  (Dkt. 26-25).  She also told him that she had punched out.  Rawls checked the computer and learned that plaintiff had not punched out and had not attempted to punch out.  She refused to sign the document and Rawls told plaintiff to punch out and go home.  Plaintiff called the store at around 9:35 p.m. and told Rawls that she left the store because she had to take care of her son and that this incident will fall under the FMLA.  (Dkt. 26-25).

According to the termination letter written by Lanell Ohlinger, plaintiff was terminated for violating Rule #4, which provides that leaving work during working hours without permission may result in immediate discharge.  (Dkt. 26-11).  According to the affidavit of Ohlinger, she made the decision to discharge plaintiff based on her review of the records, which included Rawls' 10/17/10 Statement, plaintiff's 10/15/10 discipline, and the time clock records.  (Dkt. 31, Ex. A, Ohlinger Affidavit ¶ 6).  The time clock records reviewed by Ohlinger verified that plaintiff had neither punched the time clock nor attempted to do so and that both time clocks at Store No. 642 were functioning properly on October 15, 2010.  (*Id*. at ¶ 7).  According to Kroger, plaintiff admits that all of these reasons have a basis in fact.  (Dkt. 30, Ex. B, Plaintiff Dep. pp. 113, 164 (leaving

meat on floor); 90-91, 110-11 (not punching or attempting to punch clock); 87-88 (leaving without Rawls' permission)).  Plaintiff also admits that she deserved to be disciplined for leaving the meat on the floor, (*id*. at 163), and that the time clock was functioning properly on October 15, 2010.  (*Id*. at 91).

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

Report and Recommendation
Motion for Summary Judgment
*McNeely v. Kroger*; Case No. 12-12608

the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp.2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

B.    FMLA Legal Framework

"The FMLA makes it unlawful for any employer 'to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act],' 29 U.S.C. § 2615(a)(1), or to 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act].' *Id.* at § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 281 (6th Cir. 2012). "Consistent with these proscriptions, '[e]mployers may not

discriminate against employees on FMLA leave in the administration of their paid leave policies.'" *Id*., quoting 29 C.F.R. § 825.207(a).

Plaintiff alleges that defendant violated the FMLA both by interfering with her attempt to exercise her FMLA rights and by retaliating against her for that attempt. The Sixth Circuit recognizes these "two discrete theories of recovery under the FMLA: (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Id*. "[T]he requisite proofs differ" for interference and retaliation claims. *Id*. The primary distinction is that employer intent is not considered in an interference claim. "The interference theory has its roots in the FMLA's creation of substantive rights, and '[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred,' regardless of the intent of the employer." *Id*., quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). The opposite is true of FMLA retaliation claims. "The central issue raised by the retaliation theory, on the other hand, is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Id*., quoting *Edgar v. JAC Prods.*, *Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). "In contrast to the interference theory, '[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees

invoked their FMLA rights.'"  *Id.*, quoting *Edgar*, 443 F.3d at 508.

FMLA interference claims arise under 29 U.S.C. § 2615(a)(1), which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  To establish a prima facie case of interference, the plaintiff must prove that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of his intention to take leave; and (5) the defendant denied the employee FMLA benefits to which she was entitled.  *Killian v. Yorozu Auto. Tenn.*, *Inc.*, 454 F.3d 549, 556 (6th Cir. 2006), citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).  Because the only issue is whether the employee was entitled to the FMLA benefits denied by his employer, an employer's intent is not relevant to determining whether actionable interference has occurred.  *Edgar*, 443 F.3d at 507.  However, the FMLA is not a strict-liability statute, meaning that "employees seeking relief [based on FMLA interference] must ... establish that the employer's violation caused them harm."  *Id.* at 508, citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also Hollins v. Ohio Bell Tel. Co.*, 496 F. Supp.2d 864, 871 (S.D. Ohio 2007) (stating that, even where an employer interferes with the exercise of FMLA rights, FMLA "provides no relief unless the employee has been prejudiced by the violation").

Furthermore, no interference is actionable provided that "the employer ha[d] a legitimate reason unrelated to the [employee's] exercise of FMLA rights for engaging in the challenged conduct," *id*., such that the challenged conduct "would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401.  At issue in a FMLA interference claim "is simply whether the employer provided its employee the entitlements set forth in the FMLA-for example, a twelve-week leave or reinstatement after taking a medical leave." *Id.* (citations omitted).

A plaintiff establishes a prima facie case of FMLA retaliation by showing the following:

> (1) [that] [ ]he was engaged in an [FMLA protected] activity; (2) the employer knew that [ ]he was exercising h[is] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to h[im]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012), citing *Killian*, 454 F.3d at 556.  In the absence of direct evidence and where the prima facie case is established, an FMLA retaliation claim is then evaluated under the *McDonnell Douglas* burden shifting paradigm.  *Seeger*, 681 F.3d at 284.  Like the interference claim, even if a prima facie case has been established, if the defendant has articulated a legitimate, nondiscriminatory reason for terminating the plaintiff's

employment, the burden of establishing pretext shifts to plaintiff. *Id.* This requires plaintiff to demonstrate the reason for her termination "(1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action." *Seeger*, 681 F.3d at 285. In addition, the "honest belief" rule, which, as discussed below, applies to the pretext analysis in retaliation claims, has been described by the Sixth Circuit as follows:

> '[T]o avoid a finding that its claimed nondiscriminatory reason was pretexual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.' *Escher v. BWXT Y12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010), quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006). The employee, in turn, "must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012), quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). To overcome the employer's invocation of the honest belief rule, the employee "must allege more than a dispute over the facts upon which [the] discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

*Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 286 (6th Cir. 2012).

C.   <u>Prima Facie Case</u>

For purposes of summary judgment, Kroger does not dispute that plaintiff

can establish a prima facie case on her interference claim.  Thus, that issue will be

discussed no further.  As to the retaliation claim, defendant claims that plaintiff

failed to meet prongs two and three of her prima facie case.  In response, plaintiff

makes several arguments to the contrary.  First, plaintiff points out that she

testified that she was engaged in an activity protected by the FMLA, namely that

she was utilizing FMLA leave when she left work on October 15, 2010, to provide

emergency care to her son.  Second, plaintiff says that Kroger knew plaintiff was

exercising her FMLA rights.  After receiving a phone call from her son who was

in need of emergency care, plaintiff sought permission to leave and exercise her

FMLA rights, but she was unable to find co-manager Rawls so she sought

permission from her department manager, Kirk Donner.  (Dkt. 30, Ex. 1, pp.

72-74, 76).  According to plaintiff, pursuant to past practice, department heads

have granted plaintiff permission to exercise her FMLA rights.  (Dkt. 30, Ex. 1,

pp. 72-74).  Plaintiff points out that Kroger has provided no policy or procedure to

the contrary.  Third, after defendant learned of plaintiff's exercise of her FMLA

rights, she was terminated.  Plaintiff points out that she was not immediately

terminated on October 15, 2010; rather, she was suspended pending advisability of

discharge.  (Dkt. 30, Ex. 3).  She was not terminated until her alleged violation of

work rule #4, leaving work without permission, was investigated.  (Dkt. 30, Ex. 4).

Plaintiff notes that her termination letter is completely silent regarding her use of

FMLA leave, however there can be no denying that defendant was aware of plaintiff's FMLA certifications and the asserted reason she left the store's premises. (Dkt. 30, Ex. 1, pp. 44-45, 72, 76, 96, 103, 118, 133, 160-161, 206).

As to the retaliation claim, the issue is really whether the termination itself was retaliation for plaintiff's exercise of FMLA rights. The parties spend a lot of time talking about Rawls' actions and motivations, but it seems readily apparent that Rawls was not the decision-maker regarding the termination. And, plaintiff admits that she did not tell Rawls that she was using FMLA time until after he suspended her. Thus, nothing Rawls did could be considered "retaliatory." However, Ohlinger was aware that plaintiff claimed she was using FMLA leave, as that claim was contained in Rawls' statement after the suspension, which Ohlinger said she reviewed. Thus, the undersigned concludes that prongs two and three of the prima facie case are satisfied because Kroger was aware that plaintiff claimed to have a right to FMLA leave and Kroger took an adverse employment action (termination) after learning of her claim.

D.   Pretext

To defeat Kroger's motion for summary judgment on her FMLA claims, "Plaintiff must also create a factual dispute" as to whether the interference with her attempt to exercise her FMLA rights "was based on a legitimate business reason." *Romans*, 668 F.3d at 841. "If Defendant proffers such a justification,

then Plaintiff may seek to rebut it by showing, among other things, that the excuse was insufficient to warrant the challenged conduct." *Id.* A plaintiff can do this "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (internal quotation marks and citation omitted).

        1.    Kroger's arguments

In this case, Kroger makes two arguments regarding why plaintiff's FMLA claims should fail. First, Kroger argues that it would have made the same decision regarding plaintiff's termination had plaintiff not exercised her FMLA rights. (Dkt. 26, Pg ID 148), citing *Romans*, 668 F.3d at 840. During the period that plaintiff was absent from the store on October 15, 2010, Rawls attempted to track plaintiff down several times over the intercom and camera systems within the store. (Dkt. 26, Ex. X, 10/17/10 Rawls Statement; Ex. Y, 10/15/10 discipline). While looking for her in the meat department, Rawls noticed plaintiff had left perishable meat on the sales floor. *Id*. After plaintiff returned to the store, plaintiff claimed to Rawls that she had punched out on the time clock prior to leaving the store and back in on her return. (Dkt. 26, Ex. X, 10/17/10 Rawls Statement; Ex. Y, 10/15/10 discipline). Rawls ran a report from the time clock, which showed that plaintiff had not punched or attempted to punch the time clock

in or out when she left the store. *Id*. According to Kroger, Rawls determined that, given plaintiff's history of attendance and food safety violations, together with her failures to punch the time clock, obtain permission from Rawls to leave the store and put the meat in the cooler, suspension pending termination procedures of plaintiff's employment was appropriate. (Dkt. 26, Ex. X, 10/17/10 Rawls Statement; Ex. Y, 10/15/10 discipline). Rawls informed plaintiff of his decision, and plaintiff punched out and left the store. (Dkt. 26 Ex. X, 10/17/10 Rawls Statement; Ex. Y, 10/15/10 discipline). Kroger argues that, at no time prior to deciding to discipline plaintiff on October 15, 2010, did plaintiff tell Rawls of her FMLA status. (Dkt. 26, Ex. X, 10/17/10 Rawls Statement). According to Kroger, plaintiff does not allege otherwise.

Based on the foregoing facts, Kroger argues that plaintiff cannot establish pretext. Once the employer articulates a legitimate, non-discriminatory reason for terminating the plaintiff's employment, the plaintiff's claims can survive summary judgment only if she can show that the employer's stated reasons are a pretext for unlawful discrimination. Here, Kroger maintains that plaintiff has not and cannot produce sufficient evidence (or any evidence, for that matter) that proves Kroger's reasons (1) are untrue; (2) did not actually motivate her termination; or (3) are insufficient to warrant termination. Plaintiff admits that she left perishable meat on the sales floor when she left the store and that she deserved to be disciplined

for it (Dkt. 26, Ex. A, Plaintiff Dep. pp. 113, 163, 184), that she left the store without obtaining permission from Rawls (*Id*. at pp. 25, 72; Dkt. 24, Second Am. Compl. ¶¶ 19-21, 25), and that she was not punched out for break during her time away from the store.  (Ex. A, Plaintiff Dep. pp. 110-11).  As a result, Kroger says she cannot carry her burden at the pretext stage, and her interference claim fails as a matter of law.  *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 532 (6th Cir. 2012).

Next, Kroger claims that plaintiff cannot overcome the Sixth Circuit's "honest belief" rule, which considers not whether the termination was a good business decision by objective standards, but whether the employer reasonably relied on particularized facts when coming to its employment decision.  *Smith v. Chrysler Corp*., 155 F.3d 799, 807 (6th Cir. 1998).  The employer does not need to utilize a decision-making process that is "optimal" or leaves "no stone unturned;" courts should not "micro-manage" an employer's business decisions.  *Id*.  When "the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless."  *Id*.  Indeed, a "case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds for termination.  Instead, the employee also must offer some evidence that not only were the employer's reasons false, but that retaliation was the real reason for the adverse action."  In *Tingle*, the employer based its discharge

decision on its honest belief that the plaintiff had committed her last strike under a progressive discipline policy. *Tingle*, 692 F.3d at 529. The plaintiff opposed the employer's invocation of the honest belief rule on the grounds that she believed her employer "had an ax to grind against her;" this alleged personal animus, according to the plaintiff, showed that the employer could not honestly believe that her last strike was the true reason for discharge. *Id*. at 532. The Court disagreed and held that, as a matter of law, even if a personal animus did exist, "that alone would not be enough to demonstrate retaliatory motive or demonstrate that the defendants lacked an honest belief in their stated motive." *Id*. It is not enough for a plaintiff to deny the occurrence of the conduct that formed the basis for the discharge. *Id*. Indeed, whether the plaintiff and defendant agree on the facts underlying the discharge is "irrelevant." *Id*. This is true because so long as the employer honestly believes its own story, the plaintiff cannot prove pretext, and the claims fail as a matter of law. *Id*.

Similarly, in *Curry v. SBC Communications, Inc.*, 669 F. Supp.2d 805, 828 (E.D. Mich. 2009) (opinion of Lawson, J.), the Court held that it was "beside the point" that the plaintiffs disputed whether the employer's version of events giving rise to their terminations actually occurred. Rather, to determine "if the plaintiffs have raised a genuine issue of material fact as to pretext, the Court should consider not whether the plaintiffs actually breached the defendant's rules, but rather

whether the defendant had an honestly held belief that they had committed a violation of the rules." *Id.*, quoting *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008) (alterations omitted). Indeed, "the possibility that witnesses may have lied and the plaintiffs were not actually guilty is of no consequence, as long as their story is plausible." *Id.*; *see also Campbell v. Eagle Bend Mfg., Inc.*, 2011 WL 2471493, *9 (E.D. Tenn. 2011) (employer's stated reasons for termination included that, as reflected in company records, the plaintiff had failed to swipe his timecard) (Dkt. 26, Ex. CC). The court granted summary judgment in part because the plaintiff failed to present "proof that [his employer] did not have an honest belief that he had violated the attendance policy as demonstrated by plaintiff's records." *Id.*

Here, even if plaintiff claims that she attempted to punch out on the time clock when leaving the store to allegedly care for her son and attempted to punch back in when she returned, according to Kroger, these claims do not change the fact that she admits that Rawls ran a time clock report, and the report showed that not only had plaintiff not punched out, she did not even attempt to do so. (Dkt. 26, Ex. A, Plaintiff Dep. pp. 103, 110). When faced with this report, Rawls was not required to undertake any further investigation or upend every stone in search of whether plaintiff had actually failed to punch the time clock. *See Smith*, 155 F.3d at 807 (The employer certainly does not need to utilize a decision making process

that is "optimal" or leaves "no stone unturned;" courts should not "micro-manage" an employer's business decisions). Rather, by first consulting the report and then basing his termination decision at least in part on the report, Rawls satisfied the honest belief rule's requirement that he needed only to "reasonably rel[y] on particularized facts when coming to [the] employment decision." *Smith*, 155 F.3d at 807.

According to Kroger, plaintiff's admission that Rawls undertook these efforts cements the conclusion that the honest belief rule bars any finding that Kroger's reasons for terminating her employment were pretextual because to defeat summary judgment, plaintiff must prove that Rawls' belief that plaintiff had taken a break without punching out on the time clock was not honestly held. *Tingle*, 692 F.3d at 531. "An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Id*. Here, according to Kroger, plaintiff does not dispute, much less disprove, the factual accuracy of Rawls' conclusion that she had not punched the time clock and admits she saw the report that shows she had failed to do so. Accordingly, Kroger contends that plaintiff has admitted that Rawls' belief that plaintiff had breached the attendance policy was honestly held by Rawls, and plaintiff fails to establish pretext for this additional, independent reason.

2.    Plaintiff's arguments

According to plaintiff, Kroger is wrongfully claiming that it had a legitimate reason, unrelated to the exercise of her FMLA rights, to terminate her. In defendant's words: "Rawls determined that, given Plaintiff's history of attendance and food safety violations, together with her failures to punch the time clock, obtain permission from Rawls to leave the store and put the meat in the cooler, suspension pending termination procedures of Plaintiff's employment was appropriate." (Dkt. 26, p. 10). Plaintiff points out that defendant did not depose Rawls and thus it can not say how or what he determined in regard to plaintiff's employment or Constructive Advice Record; rather, we only have the documents to rely on. In fact, the Constructive Advice Record makes no reference to "Plaintiff's history of attendance and food safety violations." (Dkt. 30, Ex. 3). Further, plaintiff was notified via correspondence dated November 12, 2010, which stated that she was terminated for violation of "store rule #4." (Dkt. 30, Ex. 4). Store rule number 4 is "leaving work during work hours without permission." (Dkt. 30, Ex. 2, p. 26). Plaintiff also points out that her termination was investigated by John Goodgine and the termination letter came from Ohlinger, not Rawls. (Dkt. 30, Ex. 4). Therefore, defendant's purported legitimate reason, unrelated to the exercise of plaintiff's FMLA rights, is that she left during work hours without permission. According to plaintiff, however, defendant has

presented no evidence of any other reason or progressive discipline explaining

plaintiff's termination and no other reasons should be considered.

Plaintiff also contends that she did not leave work without permission.

When plaintiff received a phone call that her son needed emergency assistance,

Rawls was not on the store premises to grant permission and thus, plaintiff sought

permission from her department head. (Dkt. 30, Ex. 1, p. 76-96). Plaintiff

testified that when she previously exercised FMLA leave, she would first notify

the store manager or department manager; that she would be allowed to leave if

the shift was covered; and that she was required to punch out. (Dkt. 30, Ex. 1, pp.

72-74, 115). Plaintiff testified that a department manager had previously

permitted her to leave the store to exercise FMLA leave and that she had never

been advised such a procedure is wrong. (Dkt. 30, Ex. 1, pp. 72-74). While

plaintiff may have left work without Rawls' permission, defendant has not

identified a policy or procedure that states only Rawls or another assistant

manager has the authority to grant such permission. According to plaintiff, she

sought permission as was previously allowed.

Further, plaintiff says she attempted to punch before and after her FMLA

leave, unfortunately the time clocks are known to have problems and due to

plaintiff's state of mind she did not bother to make sure her punch was accepted.

(Dkt. 30, Ex. 1, pp. 89, 109-110, 185-186). According to plaintiff, failure to

punch is neither the stated reason for her termination nor a violation that may result in immediate termination. (Dkt. 30, Exs. 2, 4). While Kroger attempts to blame plaintiff for not advising Rawls that she was utilizing FMLA, plaintiff maintains that before terminating plaintiff, Kroger had plenty of adequate notice that she was utilizing FMLA leave: (1) she sought permission from her department head as was previously allowed; (2) she told Rawls that she had left to provide emergency care for her son; (3) Plaintiff has submitted FMLA certifications since 2005; (4) she told Rawls that she has FMLA; and (5) she told assistant store manager Keith Austin that she had to utilize FMLA leave to provide emergency care to her son. (Dkt. 30, Ex. 1, pp. 44-45, 72, 76, 96, 103, 118, 133, 160-161, 206).

According to plaintiff, defendant has failed to state a legitimate reason, unrelated to plaintiff's FMLA rights, for her termination. Plaintiff was terminated for allegedly leaving work without permission when in reality she sought permission to leave work to utilize FMLA leave. Plaintiff's FMLA rights are directly related to her leaving work and thus to her termination. At the very least, plaintiff contends that there is a genuine issue of material fact regarding whether or not plaintiff had sought permission to leave work for FMLA purposes and thus summary judgment should be denied.

Assuming, for the sake of argument, that defendant did in fact state a

legitimate reason, unrelated to plaintiff's FMLA rights, for her termination, plaintiff asserts that Kroger's "honest belief" argument still fails. While Kroger assumes that Rawls carried out plaintiff's termination, there is no evidence that he did so or is authorized to do so. In fact, the Constructive Advice Record executed by Rawls states that plaintiff "IS BEING SUSPENDED PENDING ADVISORY DISCHARGE," it does not state that she is terminated. (Dkt. 30, Ex. 3). The correspondence dated November 12, 2010, and signed by Ohlinger, however, states that plaintiff is terminated and that she was terminated for violation of "store rule #4." (Dkt. 30, Ex. 4). The letter further states that Goodgine investigated the violation. (Dkt. 30, Ex. 4). As stated above, defendant was well aware of plaintiff's FMLA status and that she sought permission to leave work to exercise her FMLA rights. According to plaintiff, it is clear that the termination was not carried out by Rawls; thus it is illogical to analyze his honest belief and summary judgment should be denied.

3.     Kroger's reply

In reply, Kroger contends that plaintiff has failed to offer any evidence that the reasons for her suspension and termination were pretext for unlawful interference under the FMLA. While plaintiff contends that she had permission from Donner to leave the store, she has not shown that Rawls' decision to suspend her pending the advisability of discharge based on her failures to obtain

management's permission to leave the store, to punch the time clock and put the meat into the refrigerator were pretextual. Moreover, as supported by the affidavit of Ohlinger, she made the decision to discharge plaintiff based on her review of the records, which included Rawls' 10/17/10 Statement, plaintiff's 10/15/10 discipline and the time clock records. (Dkt. 31, Ex. A, Ohlinger Affidavit ¶ 6). The time clock records reviewed by Ohlinger verified that plaintiff had neither punched the time clock nor attempted to do so and that both time clocks at Store No. 642 were functioning properly on October 15, 2010. (*Id*. at ¶ 7).

In addition, Kroger contends that plaintiff has not presented any evidence, much less the "sufficient" evidence required by *Seeger*, to show how leaving without Rawls' permission, without punching or attempting to punch the time clock or putting the meat away were insufficient reasons to warrant termination or that they could not, as a matter of law, actually have motivated her discharge. Instead, plaintiff addresses only one of Kroger's proffered reasons, that she left work without permission, and focuses solely on her allegation that Kirk Donner gave her permission to leave the store on the night of her termination and that he had granted her permission to leave on previous occasions. According to Kroger, this argument is without merit for several reasons. First, whether plaintiff's non-management, union member department head granted her permission to leave the store does not refute the fact that plaintiff admits she left the store without

management's permission.  Indeed, plaintiff admits that nobody, other than

Donner, had "ever told [her] that [her] department head has the authority to tell

[her] that [she] could leave work."  (Dkt. 31, Ex. B, Plaintiff Dep. pp. 72-73).

Second, this testimony comports with plaintiff's admission in her brief that the

reason she attempted to track Rawls down to obtain his permission was because

Kroger's "practice and policy" required her to do so.  (Dkt. 30, p. 3).  If it is true,

as plaintiff claims, that Donner's authorization was all she needed to obtain

permission to leave the store, she would not have needed to first seek Rawls'

permission.

    Finally, plaintiff alleges that she had obtained permission from Donner in

the past "and that she had never been advised such a procedure is wrong."

According to Kroger, this argument, however, makes the unfounded assumption

that Kroger management had ever been in a position to advise her that such a

procedure is wrong (i.e., that she had been previously caught by a Store Manager

or Co-Manager leaving work with only her department head's permission).

Indeed, of the numerous times plaintiff had been disciplined during her

employment, none of those incidents involved plaintiff's claim that a department

head's authorization excused her misconduct.  (Dkt. 31, Exs. C-L).  In sum,

Kroger contends that plaintiff's failure to "make an affirmative showing with

proper evidence" with respect to any of the methods of proving pretext regarding

any of Kroger's three proffered reasons for discharge is fatal to plaintiff's case at the summary judgment stage.

4.      Analysis and conclusion

Unfortunately, there is a lack of factual development in this record regarding plaintiff's termination and the reasons for it.  The record contains the initial write up, the termination notice, the Ohlinger declaration, and plaintiff's deposition.  Neither party deposed plaintiff's manager, the investigator, the person who made the decision to terminate, or any of the people present on the date of the incident, other than plaintiff.  In addition, no contemporaneous documents relating to any investigation or decision-making process as to plaintiff's termination are in the record.  According to the "Constructive Advice Record" prepared by Rawls on the date of the incident, plaintiff was suspended pending discharge for two reasons: "quality of work" and "walking off job without permission."  (Dkt. 26-6). According to this document, plaintiff was scheduled until 10 pm on October 15, 2010, she left the store at 5:30 p.m. without permission, she did not punch out or attempt to punch out, and she returned to work at 6:55 p.m.  *Id*.  According to this document, "this is considered walking off the job.  Tanya also left perishable lunch [meat] on the sales floor while she was gone."  *Id*.  According to Rawls' statement two days after the events in question, plaintiff told him that she left for lunch because she was scheduled late and she had to feed her children.  (Dkt. 26-

25).  She also told him that she had punched out.  Rawls checked the computer and

learned that plaintiff had not punched out and had not attempted to punch out.  She

refused to sign the document and Kelly Johnson, the union representation wrote

"refused to sign" on the document.[1]  Rawls told plaintiff to punch out and go

home.  Plaintiff called the store at around 9:35 p.m. and told Rawls that she left

the store because she had to take care of her son and this incident will fall under

the FMLA.  (Dkt. 26-25).  According to the termination letter, plaintiff was

terminated for violating Rule #4, which provides that leaving work during

working hours without permission may result in immediate discharge.  (Dkt. 26-

11).  There is nothing explaining who may give "permission" for leave to use her

FMLA leave, nor is there any other evidence on this issue, including who had

approved plaintiff's use of FMLA leave in the past.

The "honest belief" doctrine, which is part of a pretext analysis, as to FMLA

interference claims is somewhat "up in the air" in the Sixth Circuit.  Just before

this motion for summary judgment was filed, the Sixth Circuit decided *Tillman v.

Ohio Bell Telephone Co.*, 545 Fed.Appx. 340 (6th Cir. 2013) (unpublished).

Acknowledging several published precedents (as cited above) that interference

claims do not consider the "intent" of the employer, the Sixth Circuit questioned

---

[1]  This notation does not actually appear on the document.  (Dkt. 26-26).  However, there
is no dispute that plaintiff refused to sign.

whether the "honest belief" rule should be applied to interference claims, and the Court also noted several unpublished decisions applying the "honest belief" rule to interference claims. *Id*. at 352. The Court observed that only one published opinion appeared to endorse the "honest belief" rule in this context (*Donald v. Sybra*, 667 F.3d 757 (6th Cir. 2012)), but did not specify in its analysis whether it was discussing the interference claim or the retaliation claim. *Id.* In any event, the Court concluded that *Donald v. Sybra* offered "no endorsement of an 'honest belief' defense directly related to the exercise of FMLA rights: the employer's belief that the employee misrepresented his medical condition to obtain improper FMLA leave." *Id*. at 353. While the Court ultimately determined that the issue need not be resolved in *Tillman*, it did state: "In our view, neither of these provisions [from Title 9 and the accompanying Code of Federal Regulations] support the broad inference these courts (and our concurring colleague) make: that an employer may defeat an interference claim solely on the basis of its honest belief (even if mistaken) that the employee wrongfully claimed FMLA leave." *Id.* at 354. Notably, the *Curry* and *Tingle* cases cited by defendant do not involve an FMLA interference claim. The same is true for *Smith*, 155 F.3d at 807. And, in *Tillman*, the Court concluded that *Donald v. Sybra*, also relied on by defendant, did not really apply the honest belief rule to an interference claim.

Essentially, the majority in *Tillman* does not reach the conclusion that the

honest belief defense applies to FMLA interference claims. Rather, they

specifically say they do not have to "resolve this thorny issue." And, they note

that *Donald v. Sybra* does not provide an "endorsement of an 'honest belief'

defense directly related to the exercise of FMLA rights." The decision in *Tillman*,

affirming the grant of summary judgment in favor of the employer, was based on

the determination that the plaintiff had not made out a prima facie case because he

did not show he was "entitled" to take FMLA leave on the specific days in

question. The concurring opinion, authored by Chief Judge Rosen, attempts to

show that there are two lines of authority applicable:

> In summary, although our precedent in this area is not
> pristinely clear, two lines of interference claim analyses
> emerge: one in which the issue is simply whether the
> employee is "absolutely entitled" to leave, and the
> employer makes no claim that it suspects the employee is
> abusing his leave; and a second line in which an
> employer shows that it has an honest belief that the
> employee has abused his leave in some way. In the
> former cases, an employer's intent is indeed irrelevant
> because the only question is whether the employee is
> entitled to leave. In the latter cases, however, the
> employer's intent is quite relevant.

*Tillman*, 2013 WL 5339612 at 361. In this case, there is no allegation that

plaintiff abused her FMLA leave. Therefore, it does not appear, even under Judge

Rosen's analysis, that the honest belief doctrine would apply to the pretext

analysis for plaintiff's interference claim.

Thus, given the "thorny" issue as discussed in *Tillman*, the undersigned can only conclude that there is no binding precedent in the Sixth Circuit which requires the application of the honest belief defense to all FMLA interference claims, and the honest belief doctrine does not apply to this case because Kroger has not alleged that plaintiff abused her FMLA leave. Under these circumstances, where plaintiff is assumed to have established a *prima facie* case, Kroger has asserted a reason for termination, and plaintiff is required to show pretext, the undersigned concludes that there are factual questions associated with these issues that defeat defendant's motion for summary judgment. Specifically, there is a factual issue regarding whether plaintiff had authority to leave work.[2] Kroger has not rebutted plaintiff's claim that she had permission from her department manager to leave the store and use her FMLA leave *and* that she had used FMLA leave in the past with only the permission of her department manager. While Kroger claims that only store managers and co-managers may give such permission, there is no written policy to that effect and, more importantly, Kroger offers no evidence to rebut plaintiff's specific claim that she had used her FMLA leave in the past with only the permission of her department manager.

---

[2] While Kroger claims that leaving perishable meat out on the floor and failing to punch out were additional reasons for her termination, those were not included in the termination letter as reasons for her termination and significantly, they are not terminable offenses in the Kroger employee manual. Kroger does not specifically claim or provide any evidence that it would have terminated plaintiff for these reasons alone.

And, even if the honest belief defense did apply to an interference claim (as it does to a retaliation claim), Kroger did not have an honest belief that plaintiff left the store without permission to use FMLA leave.  An honest belief is a "reasonably informed and considered decision based upon the particularized facts before it at the time." *See Tillman*, at *9.  While the decisional process used by the employer need not "be optimal or that it left no stone unturned" it must be based on the "particularized facts." *Id*.  Thus, the question is not whether plaintiff actually left the store without permission to use FMLA leave, it is whether Kroger reasonably and honestly believed that she did not. *See e.g.*, *White v. Telcom Credit Union*, 873 F. Supp.2d 690, 709 (E.D. Mich. 2012).  This case is similar to that in *White v. Telcom*, where the court was presented with conflicting testimony regarding whether the plaintiff's behavior was disruptive and insubordinate, finding a question of fact.  In finding a question of fact regarding the decision to terminate in *White v. Telcom*, the court analyzed the issue as follows:

> As to the May 17th decision to terminate, Plaintiff presents the following evidence suggesting that it was not a reasonably informed and considered decision. Deposition testimony reveals that, immediately after the May 17th meeting where Plaintiff's written warning was administered, Ms. Lang and Ms. LeSage agreed that Plaintiff should be fired because her conduct during that meeting was "very un-businesslike" and thus "insubordinate." (LeSage Dep. at 28–31.) Ms. LeSage and Ms. Lang then went to Ms. LeSage's manager, Craig Larson, and told him about the meeting and their

Report and Recommendation
Motion for Summary Judgment
*McNeely v. Kroger*; Case No. 12-12608

conclusions. Ms. Lang and Mr. Larson then went to
Defendant's CEO, Thomas Reagan, and told him that
they felt Plaintiff's actions were insubordinate and that
they wanted her terminated. (Lang Dep. at 25.) Without
ever asking Plaintiff about that meeting or conducting
any investigation, Defendant's CEO simply agreed with
the decision to terminate Plaintiff the next day. Plaintiff
testified that, when she was terminated on May 18th, she
was only told that she was no longer an adequate fit for
Defendant Telcom Credit Union. She did not understand
why she was being terminated on May 18th when the
written warning she had received the day before stated
that she would be fired if there were further occurrences
and there were none. (Pl.'s Dep. at 24–26, 90–91.)
Plaintiff also presents evidence that suggests Defendant
did not have an "honest belief" that she was
insubordinate but rather knew Plaintiff was attempting to
go out on an extended FMLA leave after surgery on her
ankle and simply decided to retaliate and terminate her
rather than allow her to do so. This takes Plaintiff's
proofs far outside those presented by the Plaintiff in
*Seeger*. Viewing the evidence in the light most favorable
to Plaintiff, this Court cannot conclude that Defendant
made a "reasonably informed and considered decision"
before it disciplined and then terminated Plaintiff.
Plaintiff here, unlike the plaintiff in *Seeger*, has
presented evidence to allow a reasonable jury to
conclude that Defendant's decision-making process was
not worthy of credence.

*Id.* at 710.

Here, plaintiff claimed she had received the permission of her immediate

supervisor to leave, a procedure she alleged had been employed numerous times in

the past.  Kroger's belief that plaintiff did not have authority was not based on

speaking with the immediate supervisor or reviewing plaintiff's personnel file to

see what the past practices of the company had been regarding plaintiff's FMLA leave, which all acknowledge had been taken previously. An "honest" belief is not "honest" if it deliberately ignores the particularized facts of the situation at hand. Notably, the investigation report is not included in the record and there is no evidence regarding whether Kroger actually investigated plaintiff's claim that she had been granted permission by her department head to use her FMLA leave on that occasion or in the past.

And, while Kroger says that plaintiff's claim to have received permission in the past from department managers should not be considered because Kroger is not in a position to know if plaintiff previously failed to follow policy and simply did not get caught, Kroger misses the point. Plaintiff claims not just that she left the store with permission from her department head, but that she had actually used FMLA leave with such permission in the past and names multiple department heads who approved her use of such leave. Presumably, Kroger has records of when plaintiff used FMLA leave in the past and who approved each use of such leave. No such evidence is provided nor is there any explanation regarding its absence from the record. Just as in *White v. Telcom*, even if the decision to terminate in this case could be found to be the result of a reasoned and honest belief, "plaintiff has presented additional evidence that creates a factual dispute regarding whether the decision to terminate was reasonably informed and worthy

Report and Recommendation
Motion for Summary Judgment
*McNeely v. Kroger*; Case No. 12-12608

of credence." *Id*.  For these reasons, plaintiff has established a genuine issue of

material fact regarding pretext on both the interference and retaliation claims and

summary judgment should be denied.

## IV.   RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that

defendant's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

Report and Recommendation
Motion for Summary Judgment
*McNeely v. Kroger*; Case No. 12-12608

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 9, 2014                         s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on May 9, 2014 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Cassandra L. Booms, Michael D. Weaver.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov